ELIZABETH COFFEY LADD, MARGARET COFFEY GRADDY, AND MARION COFFEY HENSLEY v. THE ESTATE OF MAY GORDON LATHAM KELLENBERGER; R. D. DOUGLAS, JR. AS CO-EXECUTOR OF THE ESTATE OF MAY GORDON LATHAM KELLENBERGER; NORTH CAROLINA NATIONAL BANK, AS CO-EXECUTOR OF THE ESTATE OF MAY GORDON LATHAM KELLENBERGER; MARY GARDNER NOVOTNEY; EILEEN TAYLOR LOVE; HELEN L. EUBANKS; RUTH L. SMITH; AGNES L. COX; BLANCHE L. SUTTON; MARTHA LOUISE L. WALKER; FRANK B. LATHAM; EDWARD L. LATHAM; LUCILLE L. REDFEARN; GABRIEL RUFFIN LATHAM; JOHN L. SNIPES; W. LUBY SNIPES, JR.; JAMES E. SNIPES; RUTH S. BROWN; MABLE S. TALTON; LELA S. WHITLEY; HAZEL S. HARDEE; MILDRED S. SORTINO; JOHN L. LATHAM, JR.; LOUISE L. NYGARD; MAY GORDON L. LUTHI; EDYTHE V. LATHAM; AND ALL UNKNOWN HEIRS OF MAY GORDON LATHAM KELLENBERGER

No. 8218SC1116

(Filed 18 October 1983)

Adoption § 1— doctrine of equitable adoption—not recognized

The trial court properly dismissed plaintiffs' action for failure to state a claim for relief where plaintiffs alleged a right to share in decedent's residuary estate as decedent's "adopted" children. The allegations in plaintiffs' complaint indicated that no statutory proceeding for adoption was ever instituted, and our courts have never created the relationship of parent and child with the resulting right of inheritance solely from a private contract to adopt. G.S. 29-17(a).

APPEAL by plaintiffs from *Helms, Judge.* Orders entered 4 March and 13 May 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 20 September 1983.

Plaintiffs are appealing from an order of the trial court allowing motions to dismiss for lack of personal jurisdiction and from an order allowing motions to dismiss for plaintiffs' failure to state a claim for relief.

On 1 May 1975 May Gordon Latham Kellenberger died testate in Guilford County, North Carolina. After bequeathing generous amounts of money to named charitable, educational and religious organizations, the decedent provided for the distribution of her residual estate in the following manner:

I have various relatives, both on my father's and mother's sides of the family, who would inherit from me if I died intestate. Rather than make individual bequests to

them, I hereby provide that forty percent (40%) of my residual estate (after the payment and distribution of the bequests set out) shall be set aside for my relatives. Any Federal tax due by reason of such bequest shall be paid out of the forty percent (40%), and the balance shall be divided among my relatives according to law, with each taking that proportion which he or she would take under the law of North Carolina if I had died intestate. . . .

The decedent left no surviving spouse nor any surviving lineal descendents. In a subsequent proceeding for determination of heirship and order of distribution under G.S. 28A-22-3, twenty-three persons were named as heirs of decedent and the persons who would take if decedent had died intestate. An order to this effect was entered on 21 May 1980.

Almost a year later plaintiffs instituted an action against the decedent's estate and the twenty-three persons named as heirs of decedent. Plaintiffs alleged that they were the adopted daughters of decedent and therefore entitled to her residual estate. Plaintiffs' allegations are summarized below:

In 1933 plaintiffs Elizabeth Coffey and Margaret Coffey were three years of age. Their sister, Marion Coffey was age five. Plaintiffs' father, H. Wilson Coffey, approached the decedent and her husband about taking custody of his daughters because he and his wife were unable to support them. During this meeting, Coffey agreed to surrender all rights to his daughters and the Kellenbergers agreed to rear and educate the three girls, to adopt them and to make them their heirs at law. Upon information and belief the plaintiffs' mother consented to this agreement.

Subsequent to the agreement the Kellenbergers placed plaintiffs in an orphanage but provided the girls with lavish gifts of clothing, money and toys. Plaintiffs' natural parents exercised no control over them. In 1948 plaintiffs' father again met with the Kellenbergers. The Kellenbergers agreed to adopt plaintiffs and to pay for their education if Coffey continued to exert no parental control. Decedent paid for plaintiffs' education beyond high school and continued to give them gifts during her lifetime. Decedent even provided money and assistance for the higher education of plaintiffs' children.

The agreement between the Kellenbergers and Coffey constituted a contract to adopt the plaintiffs. Coffey and plaintiffs fully performed their duties under the contract. The decedent, however, did not carry out her contractual duties to adopt the plaintiffs and to execute a will making plaintiffs her heirs at law and partakers of her estate.

Plaintiffs prayed that the trial court decree specific performance of the contract between decedent and plaintiffs' father by declaring that plaintiffs share in decedent's estate as her heirs and children, that an adoption by estoppel or an equitable adoption be recognized and enforced by the court on plaintiffs' behalf and that defendants be estopped from disputing plaintiffs' rights of inheritance as decedent's adopted daughters.

*Crisp, Davis, Schwentker & Page, by William T. Crisp and Cynthia M. Currin, and Pree & Pree, by Robert O'Shea, for plaintiff appellants.*

*Douglas, Ravenel, Hardy, Crihfield & Bullock, by Robert D. Douglas, III, and James M. Lung, for defendant appellees Ruth L. Smith, Frank B. Latham, Edward L. Latham, Jr., Louise L. Nygard, the estate of May Gordon Latham Kellenberger, R. D. Douglas, Jr., as co-executor of the estate of May Gordon Latham Kellenberger, North Carolina National Bank as co-executor of the estate of May Gordon Latham Kellenberger, Mary Gardner Novotney, Agnes L. Cox, Martha Louise L. Walker, Edythe V. Latham, Lucille L. Redfearn, Gabriel R. Latham and John L. Latham, Jr.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Edward L. Murrelle and R. Thompson Wright, for defendant appellees Blanche L. Sutton and May Gordon L. Luthi.*

*Daughtry, Hinton, Woodard & Murphy, by W. Kenneth Hinton, for defendant appellees John L. Snipes, W. Luby Snipes, Jr., James E. Snipes, Ruth S. Brown, Mabel S. Talton, Lela S. Whitney, Hazel S. Hardee and Mildred S. Sortino.*

ARNOLD, Judge.

Since the doctrine of equitable adoption has not been adopted by this State and appears to be contrary to public policy and the

prevailing law, we affirm the trial court's order dismissing plaintiffs' action for failure to state a claim for relief.

Plaintiffs argue that the trial court erred in allowing defendants' motion to dismiss their action for failure to state a claim for relief. They claim that their complaint sets forth sufficient facts to establish a claim under the legal doctrine of equitable adoption. "A complaint may be dismissed on motion filed under Rule 12(b)(6) if it is clearly without merit; such lack of merit may consist of an absence of law to support a claim of the sort made, absence of fact sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim." (Citation omitted.) *Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E. 2d 240, 241 (1981). Assuming *arguendo* that the plaintiffs in the case *sub judice* set forth facts sufficient to establish a claim under the doctrine of equitable adoption, their case was properly dismissed because of an absence of law in this jurisdiction to support this doctrine.

The doctrine of equitable adoption has been applied by a number of courts when parties capable of contracting enter into a clear and complete contract to adopt a child and there is consideration supporting the contract in the form of performance on the part of the child but failure of the adopting parents to complete a statutory adoption. *See* 2 Am. Jur. 2d *Adoption* § 16 (1962). *See, also,* Annot., 97 A.L.R. 3d 347 (1980). In such situations the agreement "will be enforced in equity to the extent of decreeing that the child occupy in equity the status of an adopted child, and be entitled to the same rights of inheritance in intestate property of the promisor to which he would otherwise have been entitled had the intended adoption proceedings been legally consummated." 2 Am. Jur. 2d at 872. Approximately eight states have expressly refused to allow recovery on unperformed adoption contracts.

> These courts note that adoption is everywhere a creature of statute and insist on strict construction of statutes in derogation of common law. In these jurisdictions the statutory scheme provides the exclusive method of adoption and no private agreement will suffice to bring the child within the statutes of descent and distribution.

Note, *Equitable Adoption: They Took Him Into Their Home and Called Him Fred,* 58 Va. L. Rev. 727 (1972). Examination of our

statutory and case law reveals that North Carolina is a follower of this minority position.

We have found only two cases where the North Carolina courts have discussed contracts to adopt. In *Truelove v. Parker*, 191 N.C. 430, 132 S.E. 295 (1926), the heirs of intestate's "adopted" daughter sought title to intestate's real estate. The facts showed that a petition for adoption was filed and letters of adoption were issued by the Clerk of Superior Court of Harnett County pursuant to the statutory law. The facts further showed that the natural parents of the child were not a party to the adoption proceeding within contemplation of the statute. The heirs of the deceased child argued, however, that since the intestate entered into a contract of adoption and recognized this relationship during his lifetime, his heirs at law should not be permitted to defeat the rights of a child because of a departure from the statute. The Court responded that the principle applied in case of a mere technical disregard of the statute, but found the order and letters of adoption to be void because the natural parents were never served with notice of the adoption proceedings.

The other North Carolina case, which mentions contracts to adopt, is *Chambers v. Byers*, 214 N.C. 373, 199 S.E. 398 (1938). The plaintiffs on appeal have cited this case as support for their position that North Carolina recognizes private contracts to adopt. We find plaintiffs' reliance upon this case to be erroneous. The plaintiff in *Chambers* alleged that she was entitled to the land of the intestate as his adopted daughter. When plaintiff was three years of age, the intestate had entered into a written agreement with the natural father of plaintiff. Therein the intestate agreed to adopt plaintiff and to make her his sole and only heir to what he may die possessed of. The North Carolina Supreme Court reversed the judgment of nonsuit solely on the basis that the written contract was one to make a will, and therefore subject to specific performance. The Court noted, "The parties to the agreement in this case did nothing as required by the Adoption Statute." *Id.* at 377, 199 S.E. at 401.

The language in both *Truelove* and *Chambers* supports the recognition of only those adoptions perfected under the North Carolina adoption statutes. Our Supreme Court in *Wilson v. Anderson*, 232 N.C. 212, 59 S.E. 2d 836 (1950), reiterated this position:

Adoption is a status unknown to common law, and can be accomplished only in accordance with provisions of statutes enacted by the legislative branch of the State government. Under statutes providing for adoption through judicial proceedings instituted by filing a petition to a court of competent jurisdiction alleging certain requisite facts from which the court decrees the status and the right of the child, the court is said to act judicially in rendering the judgment.

*Id.* at 215, 59 S.E. 2d at 839.

In 1933, the year plaintiffs claim a contract to adopt was executed, the statutory law required the filing of a petition in the county where the child resided and the recording of an order of adoption with the Clerk of Superior Court in said county. Consolidated Statutes of North Carolina, Vol. 1, Chapter 2 §§ 182 *et seq.* On the date of Mrs. Kellenberger's death, the statutory law provided that any child adopted *in accordance with the adoption statutes* was entitled by succession to any property through or from his adoptive parents. G.S. 29-17(a). The allegations in plaintiffs' complaint indicate that no statutory proceeding for adoption was ever instituted, and our courts have never created the relationship of parent and child with the resulting right of inheritance solely from a private contract to adopt.

In refusing to recognize the doctrine of equitable adoption in this State, this Court is acting consistently with existing North Carolina law. Our refusal to recognize this doctrine is also based on this Court's reluctance to interfere in legislative matters. The Mississippi Supreme Court expressed our sentiments exactly when it refused to adopt the doctrine of equitable adoption and stated:

The question of the right of any person to base his claim of inheritance upon an oral agreement for adoption is a legislative matter, and in the absence of legislation authorizing the enforcement of an oral contract alleged to have been made many years prior to the death of a property owner, the courts should not lend sanction to such a doctrine.

*Brassiell v. Brassiell,* 228 Miss. 243, 87 So. 2d 699, 702 (1956).

By affirming the trial court's order dismissing plaintiffs' action for failure to state a claim for relief, we find it unnecessary

to address plaintiffs' remaining assignments of error, or defendants' cross assignment of error.

Affirmed.

Judges WELLS and EAGLES concur.